IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

---

No. 92-7331

---

JESUS ROMERO, JR.,

Petitioner-Appellee,

versus

JAMES A. COLLINS, Director,
Texas Department of Criminal
Justice, Institutional Division,

Respondent-Appellant.

---

Appeal from the United States District Court
for the Southern District of Texas

(May 19, 1992)

Before GARWOOD, JOLLY, and HIGGINBOTHAM, Circuit Judges.

PER CURIAM:

The State of Texas asks that we vacate an order of the United States District Court for the Southern District of Texas staying an execution scheduled between the hours of midnight and sunrise on May 20, 1992. For the reasons stated, we grant the State's motion and vacate the stay of execution.

I.

A jury in the 197th District Court of Cameron County, Texas convicted Romero of capital murder on July 19, 1985. The jury answered "yes" to the statutory special issues and the trial judge sentenced Romero to death as required by Texas law.

The Texas Court of Criminal Appeals affirmed Romero's conviction and sentence on direct appeal on September 17, 1986. See Romero v. State, 716 S.W.2d 519 (Tex. Crim. App. 1986). On January 27, 1987, the Supreme Court denied Certiorari. See Romero v. Texas, 479 U.S. 1070 (1987). On March 20, 1987, Romero sought habeas corpus relief in state post-conviction proceedings, and the state district court recommended that Romero be denied relief. The Texas Court of Criminal Appeals remanded the case to the trial Court with instructions to conduct a hearing on the issue of ineffective assistance of counsel. See Ex Parte Romero, No. 16,943-01 (Tex. Crim. App. March 24, 1987). On May 28, 1987, after the hearing, the trial court issued findings of fact and conclusions of law, recommending that relief be denied. The Texas court of Criminal Appeals denied Romero's petition without a written order. See Ex Parte Romero, No. 16,943-01 (Tex. Crim. App. June 9, 1987).

Romero filed a Petition for Writ of Habeas Corpus in the United States District Court for the Southern District of Texas on July 16, 1987. In his petition, Romero argued that his trial counsel was ineffective for several reasons, among them that counsel failed to argue Romero's youth, intoxication and troubled family background as mitigating factors during the penalty phase of his trial. The federal district court granted the writ based on counsel's failure to offer more extensive argument regarding Romero's mitigating factors. We reversed and remanded with

instructions to dismiss the petition. See Romero v. Lynaugh, 884 F.2d 871 (5th Cir. 1989), cert. denied, 110 S.Ct. 1311 (1990).

On April 4, 1990, Romero filed a second Petition for Writ of Habeas Corpus in the 197th District Court of Cameron County, Texas and in the Texas Court of Criminal Appeals. Relying on the U.S. Supreme Court's decision in Penry v. Lynaugh, 492 U.S. 302 (1989), Romero alleged that the Texas special issues precluded the jury from considering and giving full effect to the mitigating evidence of Romero's youth, intoxication and turbulent family background. On November 6, 1991, the Texas Court of Criminal Appeals, en banc with two dissents, denied relief. Romero's Motion for Rehearing was denied on December 11, 1991. On December 16, 1991, the Texas Court of Criminal Appeals granted Romero's motion to stay the mandate. On March 10, 1992, Romero filed a Petition for Writ of Certiorari in the U.S. Supreme Court. This petition is still pending.

On April 15, 1992, the state trial court set the date for Romero's execution for May 20, 1992. On May 15, 1992, Romero filed a third Application for Post-conviction Habeas Corpus in the 197th Judicial District Court, Cameron County, Texas and in the Court of Criminal Appeals. Romero asserted the first five of his six claims for the first time in his third state habeas petition. The sixth claim, asserting Penry violations, was made for the first time in the second state habeas petition. On May 18, 1992, the state trial court entered findings of fact and conclusions of law recommending that all relief be denied. The Texas Court of Criminal Appeals

3

denied relief on May 19, 1992 and Romero filed his second federal petition with the United States District Court for the Southern District of Texas. On May 19th the federal district court granted Romero's petition for stay and set an evidentiary hearing for May 22, 1992 to consider the issue of writ abuse, whether petitioner received competent psychiatric evaluations before trial, prosecutorial misconduct "concerning the issue of petitioner's mental state," and effectiveness of counsel's "investigation" of petitioner's mental state at the time of the crime and trial. The state has moved to vacate the stay of execution.

## II.

In this, his second federal habeas petition, Romero asserts six claims for relief. He first argues that because he was insane at the time of the offense and thus innocent, his execution would violate the eighth and fourteenth amendments. Second, Romero claims that he was denied effective assistance of counsel at trial. Third, Romero claims that he was denied due process because the state failed to disclose exculpatory evidence in its possession. Fourth, Romero claims that he was denied due process because his court-appointed psychiatrist was incompetent. Fifth, Romero claims that he raised his competency, but it was not adequately resolved as required by Pate v. Robinson, 383 U.S. 375 (1966). Sixth, Romero argues that the Texas Sentencing Scheme prevented the jury from giving mitigating effect to his youth, turbulent family history, and diminished role at the time of the offense, contrary to Penry v. Lynaugh, 492 U.S. 302 (1989).

4

III.

Our role in deciding a successive writ is limited. "[T]o excuse his failure to raise [his present claims] Romero . . . must show cause for failing to raise it and prejudice therefrom as those concepts have been defined in . . . procedural default decisions." McCleskey v. Zant, 111 S.Ct. 1454 (1991).

> the cause standard required the petitioner to show that "some objective factor external to the defense impeded counsel's efforts" to raise the claim in state court. Murray v. Carrier, 477 U.S., at 488, 106 S.Ct., at 2645. Objective factors that constitute cause include "`interference by officials'" that makes compliance with the state's procedural rule impracticable, and "a showing that the factual or legal basis for a claim was not reasonably available to counsel." Ibid. In addition, constitutionally "ineffective assistance of counsel . . . is cause." Ibid. Attorney error short of ineffective assistance of counsel, however, does not constitute cause and will not excuse a procedural default. Id. at 486-488, 106 S.Ct., at 2644-45. Once the petitioner has established cause, he must show "`actual prejudice' resulting from the errors of which he complains." United States v. Frady, 456 U.S. 152. 168, 102 S.Ct. 1584, 1594, 71 L.Ed.2d 816 (1982).

> If petitioner cannot show cause, the failure to raise the claim in an earlier petition may nonetheless be excused if he or she can show that a fundamental miscarriage of justice would result from a failure to entertain the claim.

The Court in McCleskey explained further that the federal courts are in any event required to entertain a successive petition when a petitioner supplements a constitutional claim with a "colorable showing of factual innocence." Id. at 1471. We recently explained the requirements of actual innocence in Sawyer v. Whitley, 945 F.2d 812 (5th Cir. 1991), cert. granted, 112 S.Ct. 434. Sawyer

> require[s] the petitioner to show, based on the evidence proffered plus all record evidence, a fair probability that a rational trier of fact would have entertained a

5

reasonable doubt as to the existence of those facts which are prerequisite under state or federal law for the imposition of the death penalty. That is, a petitioner is not actually innocent of the death penalty unless he demonstrates, under all the evidence that was and arguably should have been presented, that the jury would not have been authorized to sentence him to death.

Id. at 820 (footnotes omitted).

In Romero's first habeas trip, he also complained that his trial counsel was ineffective in fourteen respects. We found that Romero was "represented by competent counsel and received a fair trial." Romero v. Lynaugh, 884 F.2d 871 (5th Cir. 1989).

IV.

Romero offers two reasons why we should entertain his present claims although they were not presented in his first petition. He first argues that the state withheld mitigating evidence from him [Claim 3]. The contention is that the state impeded his efforts to previously raise the claim. Judge Hester, the state habeas judge, found on May 18, 1992, however, that:

> 4. The State did not fail to disclose exculpatory material to Applicant. The medical records of Romero were at least equally available to Applicant and the State at all times material. The report of Dr. Jorge Cardenas dated April 2, 1985, which Applicant alleges the State to have withheld, was a report to this Court in Cause No. 85-CR-51-C in which Romero was charged and convicted of Attempted Sexual Assault. Such report was filed in the papers of that cause on April 2, 1985, a public record and equally available to the Applicant and the State at all times.

Romero offers no reason why we should not accord deference to this finding of fact.

Romero argues that in his Claims 1, 2, 4 and 5, he presents evidence of actual innocence due to his insanity. He relatedly

6

argues that our recent decision in <u>Sawyer v. Whitley</u>, 945 F.2d 812 (5th Cir. 1991), is inapplicable to Texas' Sentencing scheme.

We need not decide the abstract question of whether legal insanity implicates actual innocence under the <u>McCleskey</u> doctrine. We are not persuaded that the recently proffered affidavits of Drs. Diaz and Cardenas implicate actual innocence. At best, they demonstrate, albeit not without equivocation, that had they been aware of two earlier episodes involving Romero they would have reached a different opinion regarding his mental capacity. Dr. Cardenas states that he would have concluded that "at the time of the alleged offense Romero was acting with severely diminished capacity such that he was temporarily insane." He further expressed doubts "whether Romero was competent to stand trial." Dr. Diaz concluded that had he been provided with certain records and other documents "at the time of my examination of Mr. Romero, I might have determined, contrary to my original findings, that at the time of the alleged offense, and as a result of his mental disorder, he had a markedly decreased ability to know that his conduct was wrong." The state habeas court attached to its findings Dr. Diaz's letter to the court dated June 28, 1985. Dr. Diaz stated then that he found Romero to be "candid and cooperative with the examination." He explained that Romero had told him that he had been recently released from jail on a previous charge, and he denied any significant history of neurological or psychiatric illnesses. He noted that "the defendant is able to remember the events and circumstances preceding and following the incident."

7

The state habeas judge found that "there is no credible evidence that Applicant was insane at the time of the offense. To the contrary, all the credible evidence is that the Applicant was sane at the time of the offense and mentally competent at trial." In short, the state habeas judge was not persuaded by the late-filed and somewhat equivocal affidavits, a finding that is due deference by this court.

Regardless of whether the finding of the state habeas judge regarding the recent affidavits is fairly supportive by the record, we are not persuaded that had this newly developed evidence been offered at trial the jury would not have been "authorized" to return a death sentence. The claim raises at best legal error, short of actual innocence, however actual innocence might be translated to the Texas system.

V.

Romero's sixth claim rests on Penry v. Lynaugh, 109 S.Ct. 2934 (1989), urging that the jury was not able to give expression to his mitigating evidence of youth, turbulent family history, intoxication, and role in the offense. We find that this claim cannot be heard in this successive writ. It is no answer that Penry was not decided until after Romero's first habeas trip. In Selvage v. Lynaugh, 842 F.2d 89, 94 (5th Cir. 1988), we found that as early as April 1980, a "Penry" contention, as it later became known as, was "not a recently found legal theory not knowledgeable by competent counsel." We found that a Penry claim was subject to the McClesky bar. Cuevas v. Collins, 932 F.2d 1078, 1082 (5th +

8

968+Cir. 1991). See also Ellis v. Collins, 956 F.2d 76, 80 (5th Cir. 1992). It is true that Romero had commenced his first federal habeas trip before Penry was decided and that Cuevas' first federal habeas was pending before the United States District Court when Penry was decided. Romero's petition was still before the federal district court three months after the grant of certiorari in Penry. 108 S.Ct. 2896. We see no reasoned basis, however, for excusing Romero's failure to assert a Penry claim in his first federal habeas. We are pointed to no legal cause for Romero's not doing so.

In sum we cannot entertain this claim unless it implicates actual innocence. In making this judgment, we are limited to evidence offered at trial. Texas continues to insist on its contemporaneous objection to Penry-type claims resting on evidence not in fact offered. Black v. State, 816 S.W.2d 350 (Tex. Cr. App. 1991). The proffered evidence of abuse as a child and of Romero's limited role in the crime was less than compelling--as was his evidence of intoxication. It is also the case that the jury was able to give some effect to much of the mitigating evidence by its answers to the interrogatories. As we said in Cuevas,

> little of this Penry evidence remains after we look only to the evidence that could not find expression in the answer to the first interrogatory; at the least not in such measure as to persuade that the absence of explanatory instructions causes this trial and sentence to be fundamentally unfair--or so raised the risk of an erroneous sentence as to implicate actual innocence.

Id. at 1083.

9

Finally, this claim fares no better if treated as an assertion that trial counsel was ineffective in not developing the mitigating evidence. This would add only to the Penry mix more evidence of Romero's mental state. We have rejected directly the assertion that this evidence sufficiently implicated factual innocence.

Relatedly, we are asked to stay this execution pending review by the Supreme Court of our decision in Graham v. Collins, 950 F.2d 1009 (5th Cir. 1992). We are told that the Supreme Court has scheduled the pending petition for writ of certiorari for conference on May 29, 1992. We also note that there remains pending, Romero's petition for writ of certiorari from the decision of the Texas Court of Criminal Appeals denying his second state habeas petition. As we understand it, that petition requests relief similar to that requested here. We do not decide whether a stay should be granted in cases reaching the merits of a Graham contention. Rather, we are persuaded that the Penry claims now asserted, including Romero's youth, do not sufficiently implicate actual innocence to allow their consideration in this petition.

Romero also urges that we should grant a stay pending our application of Sawyer v. Whitley to the Texas death penalty. We decline to do so. Whatever actual innocence may be determined to mean, we are not persuaded that it is sufficiently implicated here.

The state's application to vacate the stay of execution is GRANTED.

10