UNITED STATES of America,

v.

William Rusty WALLACE, III.

Nos. P–94–CA–010, P–90–CR–046.

United States District Court,
W.D. Texas,
Pecos Division.

Sept. 28, 1994.

Susan G. James, Montgomery, AL, for movant.

Thomas McHugh, Asst. U.S. Atty., San Antonio, TX, for respondent.

## ORDER

FURGESON, District Judge.

On this day, the Court considered the Proposed Findings of Fact and Recommendations of United States Magistrate Judge Louis Guirola, filed August 10, 1994, regarding Plaintiff's Motion to Vacate, Set Aside or Correct Sentence pursuant to Title 28, United States Code, § 2255. Defendant has not filed any objections. This Court has considered the Proposed Findings of Fact and Recommendations and is of the opinion that they should be adopted.

It is accordingly ORDERED that Magistrate Judge Guirola's Proposed Findings of Fact and Recommendations, is hereby APPROVED and ADOPTED by this Court.

It is further ORDERED that Plaintiff's Motion to Vacate or Correct Sentence is hereby DENIED.

It is finally ORDERED that the above-styled and numbered cause is DISMISSED.

## PROPOSED FINDINGS OF FACT AND RECOMMENDATIONS

GUIROLA, United States Magistrate Judge.

BEFORE THE COURT is the Defendant WILLIAM "RUSTY" WALLACE'S Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody under Title 28, United States Code, Section 2255, filed March 7, 1994. The Government filed its Response April 29, 1994 and WALLACE filed his reply to the Response on May 25, 1994. Following oral argument on July 20, 1994, the parties were allowed additional time to submit briefs.

## FACTS AND PROCEDURAL HISTORY

On June 28, 1990, the grand jury returned a seven-count superseding indictment against WALLACE and several confederates. The superseding indictment charged a conspiracy to traffic in illegally imported bobcat hides as well as several substantive violations of trafficking in these same illegally imported pelts.[1]

After a jury trial WALLACE was convicted on counts one, four, five, and seven of the indictment. WALLACE was sentenced on counts one and seven pursuant to the United States Sentencing Commission Guidelines. The district court determined that counts four and five were pre-guidelines offenses and sentenced WALLACE accordingly.

WALLACE appealed his convictions to the Fifth Circuit Court of Appeals on grounds unrelated to his sentences or the manner in which they were imposed. The Fifth Circuit affirmed the judgment of the district court.[2]

In this motion, WALLACE attacks the judgments and sentences in counts four and five. He contends that the district court should have sentenced him on counts four and five under the provisions of the sentencing guidelines because the offense conduct extended beyond November 1, 1987, the effective date of the guidelines. In addition, WALLACE argues that the district judge was provided with erroneous information concerning WALLACE's parole eligibility which affected his sentence on counts four and five.

Neither of these alleged errors was raised by direct appeal.

---

**1.** Count 1 of the superseding indictment charges conspiracy to receive, conceal, buy, sell, and facilitate the transportation, concealment and sale, after importation of bobcat hides knowing that the hides were imported contrary to U.S. law.

Counts 4, 5 and 7 charged a violation of 18 U.S.C. § 545 by receiving, concealing, buying, selling, and facilitating the transportation, con-

cealment, and sale after importation of certain merchandise imported into the U.S. contrary to 16 U.S.C. § 1538(c)(1) and 50 C.F.R. 23.11(b)(1) without obtaining proper export permits as required by 50 C.F.R. § 23.12(a)(2)(i).

**2.** *U.S. v. Ivey*, 949 F.2d 759 (5th Cir.1991), *cert. denied; Wallace v. U.S.*, —— U.S. ——, 113 S.Ct. 64, 121 L.Ed.2d 32 (1992).

## DISCUSSION

### *"Straddle" Offenses*

■ WALLACE was implicated in a conspiracy involving the trafficking in illegally imported bobcat hides. Overt acts, which also constituted individual substantive offenses, occurred both before and after the effective date of the sentencing guidelines.[3] WALLACE contends that counts four and five are "straddle" offenses and that the trial court improperly failed to apply the United States Sentencing Commission's Sentencing Guidelines to his convictions. This is an uncommon argument; defendants generally do their best to avoid the guidelines. Additionally, it is an argument which is raised here for the first time. In any event WALLACE's claim is incorrect.

■ Straddle offenses are ongoing crimes which begin before, but end after, November 1, 1987, the date on which the United States Sentencing Guidelines took effect. *United States v. Roberts,* 22 F.3d 744 (7th Cir.1994); *United States v. Gaudet,* 966 F.2d 959 (5th Cir.1992); *United States v. White,* 869 F.2d 822 (5th Cir.1989). While it is correct that conspiracy offenses have been held to constitute straddle crimes for the purposes of applying the sentencing guidelines, *United States v. Devine,* 934 F.2d 1325 (5th Cir. 1991), it does not follow that all substantive offenses within the conspiracy are likewise treated. The crime of conspiracy is entirely separate from the completed substantive offenses committed pursuant to the conspiracy, and it is appropriately punished as a separate offense. *See United States v. Inafuku,* 938 F.2d 972 (9th Cir.1991).

WALLACE's argument that certain aspects of the crime, such as concealment of the hides, were not completed until after November 1987 is not persuasive. The substantive violations in counts four and five were complete the moment WALLACE received the forbidden contraband—in this case well before November 1, 1987.

### *Erroneous Information In Presentence Report*

■ At the time of sentencing, the Court was provided with a presentence investigation report ("PSI") prepared by a U.S. Probation Officer. The PSI estimated that U.S. Parole Commission guidelines for service of time in counts four and five were six months or less. WALLACE contends that the sentences in counts four and five were based on an erroneous prediction about his future parole, because when he appeared before the Parole Commission, it recommended WALLACE be incarcerated for 36 to 48 months. However, the court discussed WALLACE's parole eligibility at some length at sentencing,[4] finally concluding: "Whatever the Parole Commission would have recommended, that is what they recommended and I don't have any, never have had any control over

---

**3.** Count seven alleges a substantive violation of 18 U.S.C. § 545 which is alleged to have occurred on February 2, 1988. Counts four and five are alleged to have occurred on December 18, 1986 and December 22, 1986, respectively.

**4.** DEFENSE COUNSEL: Your honor, I think we, the issue that I am presenting to the Court is that this particular statute if sentenced pre-guidelines would be a mere probation to 6 months maximum, and now we have the exposure of 33 to 41 months.

    THE COURT: I don't think the pre-guidelines give you 0 to 6 at all. The pre-guidelines just said you can sentence up to 5 years, period. They don't give you any guidelines prior to November, 1987.

    PROBATION OFFICER: Your Honor, I think there may be some confusion between application of the sentencing commission guidelines and the Parole Commission guidelines. That information has always been placed in the pre-guideline reports so the Court will have some

idea how this case will be reviewed by the Parole Commission for parole purposes.

    DEFENSE COUNSEL: That is exactly right. And in this presentence report in this case, Your Honor, I would point to page 13, paragraph 71. The Parole Commission guidelines for my client hold 0 to 6 months in this case, where our exposure now for counts 1 and 7 are 33 to 40.

    THE COURT: But the Parole Commission, whatever the Parole Commission did, they did. Whatever my sentence was, if the Parole Commission wanted to let them go, they could. And the Parole Commission guidelines were contained in pre-guideline cases just to give the Court some idea of how long maybe they were going to keep them there. But they certainly can keep them longer.

    PROBATION SUPERVISOR: Your Honor, in addition, the parole prognosis that Mr. Waska referred to is just that, just simply tells the court that his individual may be eligible for parole, but that does not necessarily say he's

that and don't want to have any. That is their business".[5] The PSI did not contain erroneous information about WALLACE's parole eligibility. It states in bold print that zero to six months is an "estimate only." It is clear from the statements made at sentencing that the district court considered the probation officer's prediction of what the Parole Commission would do in WALLACE's case as nothing more than an estimate.

Furthermore, the Supreme Court has held in *U.S. v. Addonizio,* 442 U.S. 178, 99 S.Ct. 2235, 60 L.Ed.2d 805 (1979), that alleged misinformation consisting of an incorrect prediction as to how the Parole Commission would exercise its discretion is not grounds for vacating a sentence. The court stated:

> [T]he judge has no enforceable expectations with respect to the actual release of a sentenced defendant short of his statutory term. The judge may well have expectations as to when release is likely. But the actual decision is not his to make, either at the time of sentencing or later if his expectations are not met. To require the Parole Commission to act in accordance with judicial expectations, and to use collateral attack as a mechanism for ensuring that these expectations are carried out, would substantially undermine the congressional decision to entrust release determinations to the Commission and not the courts. Nothing in § 2255 supports—let alone mandates—such a frustration of congressional intent.

442 U.S. at 190, 99 S.Ct. at 2235.

*Procedural Bar*

■ Finally, it is the opinion of the undersigned United States Magistrate Judge that

WALLACE is procedurally barred from presenting these claims for the first time in a Section 2255 proceeding. WALLACE failed to present the claims for relief herein through a direct appeal.

■ In *U.S. v. Shaid*[6], the Fifth Circuit adopted the same procedural bar test in Section 2255 proceedings suggested by the Supreme Court in *United States v. Frady.*[7] The Fifth Circuit held in *Shaid* that a convicted criminal defendant could challenge his conviction after it is presumed final only on issues of constitutional or jurisdictional magnitude and may not raise an issue for the first time on collateral review without showing both "cause" for his procedural default and "actual prejudice" resulting from the error.[8] The *Shaid* court also held that "[i]f the error is not of constitutional or jurisdictional magnitude, the defendant must show that the error could not have been raised on direct appeal, and if condoned, would result in a complete miscarriage of justice."[9] In subsequent decisions, the Fifth Circuit has re-affirmed these legal principles.[10] Collateral review is fundamentally different from, and may not do service for, a direct appeal.[11]

The question then is whether WALLACE has satisfied the "cause" and "actual prejudice" test with regard to his claim of error in the imposition of his sentence.

In order to prove the "cause" prong of the test, WALLACE must show some external impediment which prevented him from rais-

---

going to be paroled after the service of 6 months. It just merely says that we are informing the court or we are informing the defendant that based on certain factors, certain offense severity, certain defendant characteristics, this person may be eligible for parole after service of a certain period of time. Sentencing transcript, November 26, 1990, pages 1–27 through 1–30.

5. Transcript of Sentencing, November 26, 1990, page 1–31.

6. 937 F.2d 228 (5th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 978, 117 L.Ed.2d 141 (1992).

7. 456 U.S. 152, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982).

8. *Shaid,* 937 F.2d at 232.

9. *Id.* at 232 n. 7.

10. *See U.S. v. Pierce,* 959 F.2d 1297, 1301 (5th Cir.1992); and *U.S. v. Drobny,* 955 F.2d 990, 994–95 (5th Cir.1992).

11. *See U.S. v. Frady,* 456 U.S. 152, 165, 102 S.Ct. 1584, 1592–93, 71 L.Ed.2d 816 (1982); *U.S. v. Drobny,* 955 F.2d at 994; and *U.S. v. Shaid,* 937 F.2d at 231.

ing the claim.[12] Petitioner provides the Court with no explanation of the reason why he failed to present his grounds for relief herein through a direct appeal. Because he is unable to show cause, WALLACE's claim therefore fails the "cause" and "prejudice" test.

If Petitioner cannot show cause, the failure to raise the claim in an earlier petition may nonetheless be excused if he can show that a fundamental miscarriage of justice would result from a failure to entertain the claim.[13] Such a miscarriage of justice would be indicated if a constitutional violation probably caused Petitioner to be convicted of a crime of which he is innocent. WALLACE has not alleged that he is innocent. Without a "colorable showing of factual innocence", WALLACE fails to show a fundamental miscarriage of justice.[14]

### RECOMMENDATION

Having considered the Motion, Pleadings on file, and the relevant law, this Court is of the opinion that the Motion of the Defendant, WILLIAM "RUSTY" WALLACE, III, to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 is without merit and it is therefore the recommendation of the undersigned U.S. Magistrate Judge that said motion should be **DENIED.**

Signed, this the 8th day of August, 1994.

---

12. *U.S. v. Flores,* 981 F.2d 231 (5th Cir.1993).

13. *See Romero v. Collins,* 961 F.2d 1181, 1183 (5th Cir.1992); *U.S. v. Flores,* 981 F.2d 231 (5th Cir.1993).

14. *See McCleskey v. Zant,* 499 U.S. 467, 495, 111 S.Ct. 1454, 1471, 113 L.Ed.2d 517 (1991).