United States Court of Appeals
Fifth Circuit

**F I L E D**

**December 17, 2004**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 03-60870
_____

WOODMEN OF THE WORLD LIFE INSURANCE COMPANY,

Plaintiff —— Counter-Defendant —— Appellant,

versus

ROLAND C. LEWIS,

Defendant —— Third-Party Plaintiff ——
Counter-Claimant —— Appellee,

versus

MONARCH LIFE INSURANCE COMPANY,

Third-Party Defendant —— Appellant.

--------------------
Appeal from the United States District Court
for the Southern District of Mississippi
No. 3:02-CV-182-WS
--------------------

Before REAVLEY, DAVIS, and WIENER, Circuit Judges.

PER CURIAM:[*]

Plaintiff —— Counter-Defendant —— Appellant Woodmen of the

World Life Insurance Society ("Woodmen") and Third-Party Defendant

—— Appellant Monarch Life Insurance Company ("Monarch") appeal the

_____

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

district court's denial of their motion to compel arbitration. Woodmen and Monarch seek to enforce what they construe as a binding agreement to arbitrate against one of its insurance policyholders, Defendant — Third-Party Plaintiff — Counter-Claimant — Appellee Roland C. Lewis. We reverse and render.

## I. FACTS AND PROCEEDINGS

Woodmen is a fraternal benefit society that provides various insurance benefits to its members. Roland Lewis is a Woodmen policyholder. In 1988, Woodmen issued two policies to Lewis: (1) a disability overhead policy that provides benefits up to $20,000 per month for a maximum reimbursement of $480,000, and (2) a disability income policy that provides maximum monthly disability income of $5,050. Both policies contain a provision that states, "The Articles of Incorporation and the Constitution and Laws and any amendments to them are binding on you and any beneficiary but will not take away or reduce any of the benefits of this policy."

In December 1996, Woodmen amended its Constitution to include a Problem Resolution Procedure ("PRP"). Woodmen published the PRP in the December 1997 issue of the Woodmen magazine, which is mailed to all members. The PRP was further publicized in a May-June 1999 article. Woodmen also filed the amendment with the Mississippi Department of Insurance, as required by statute. The PRP provides, in pertinent part:

Sec. 2. Resolution of Individual Disputes

(a) Purpose. The purpose of this Section 2 is to provide opportunities for members and benefit certificate owners and beneficiaries to be promptly heard and to seek fair resolution of any disputes regarding any individual rights or individual interests they have or claim to have as members, benefit certificate owners or beneficiaries. . .

(b) Scope. This Section 2 shall apply whenever a member or benefit certificate owner or beneficiary of the Society makes a claim for damages, or claims any form of redress for a violation of his or her individual rights or a denial of individual privileges or benefits which he or she claims as a member or benefit certificate owner or beneficiary . . . No lawsuit may be filed against the Society or any officer, employee or agent of the Society . . . until the procedures described herein have been exhausted.

In August 1999, Lewis submitted a claim to Woodmen for disability resulting primarily from dementia. His claims under the overhead expense policy were for the full twenty-four month period provided by the policy; he continues to submit claims under the disability income policy on approximately a monthly basis. Lewis's claims are administered by Monarch Life Insurance Company ("Monarch"), Woodmen's third-party administrator.

Woodmen[1] has paid benefits to Lewis under a reservation of rights for the entire duration of his claim because Lewis has allegedly refused to provide sufficient information to allow Woodmen to determine whether and to what extent it is liable for Lewis's benefits. Following a lengthy exchange of correspondence, in which the parties disputed their respective rights and

---

[1] Because Woodmen and Monarch are represented by the same counsel and advance the same claims, any reference to "Woodmen" also necessarily encompasses "Monarch."

3

obligations under both policies, Woodmen brought suit in the Southern District of Mississippi to compel Lewis to arbitrate his disability claims. Woodmen's pleadings contained an alternative prayer for declaratory judgment as to its liability under the policy in the event, but only in the event, that the court failed to compel arbitration. In opposing Woodmen's motion to compel arbitration, Lewis filed a counterclaim against Woodmen and a third-party complaint against Monarch in which he sought punitive and other damages for their alleged bad faith handling of his claims under both policies.

The district court, ruling only on the motion to compel arbitration, held that Woodmen's constitution required arbitration only as to claims brought by its members, not as to claims Woodmen brings itself. The court refused to compel arbitration and ruled in favor of Lewis. Woodmen timely filed its notice of appeal.[2]

## II. DISCUSSION

### A. Motion to Compel Arbitration

### 1. Standard of Review

We review a district court's denial of a motion to compel arbitration <u>de</u> <u>novo</u>.[3]

---

[2] Interlocutory appeals from a district court's denial of a motion to compel arbitration are permitted pursuant to 9 U.S.C. § 16.

[3] <u>Am. Heritage Life Ins. Co. v. Orr</u>, 294 F.3d 702, 708 (5th Cir. 2002) (citations omitted).

4

## 2. Applicable Law

The Federal Arbitration Act[4] liberally favors arbitration and establishes a strong federal policy that fosters enforcement of arbitration agreements.[5] As arbitration is a matter of contract, however, a party will not be required to submit a dispute to arbitration absent an express agreement to do so.[6] To ascertain whether such an express agreement exists, we consider (1) whether there is a valid agreement to arbitrate between the parties and (2) whether the dispute in question falls within the scope of that arbitration agreement.[7] Doubts as to whether an agreement expressly provides for arbitration are usually resolved in favor of arbitration.[8] We look to ordinary state-law principles of contract interpretation to decide whether the parties agreed to arbitrate the dispute in question.[9] If a valid agreement to arbitrate exists, we then determine whether other legal constraints foreclose arbitration.[10]

---

[4] 9 U.S.C. § 1 et. seq.

[5] Texaco Exploration & Prod. Co. v. AmClyde Engineered Prods. Co., 243 F.3d 906, 909 (5th Cir. 2001).

[6] Pers. Sec. & Safety Sys. v. Motorola, Inc., 297 F.3d 388, 392 (5th Cir. 2002).

[7] Id.

[8] Id.

[9] Webb v. Investacorp, Inc., 89 F.3d 252, 258 (5th Cir. 1996).

[10] Id.

5

Under Mississippi law, courts give undefined contractual terms their ordinary, everyday meaning.[11]  Clear, unambiguous contracts are construed as written,[12] and ambiguities as to the meaning of terms are construed against the drafter.[13]  In this exercise, courts are concerned primarily with what the parties said, not what they intended, as this is the better measure of assigning meaning fairly and accurately.[14]

### 3.    The Correspondence Claims and Woodmen's Claims

The central issue here is whether the PRP requires arbitration of claims that Woodmen brings, as distinguished from claims brought by members and policy beneficiaries.  Woodmen contends that the PRP, incorporated by reference into its contract with Lewis,[15] requires arbitration of all disputed claims of its policy holders and members, regardless of who initiates (or refrains from

---

[11] Sanderson Farms, Inc. v. Gatlin, 848 So. 2d 828, 836 (Miss. 2003).

[12] IP Timberlands Operating Co. v. Denmiss Corp., 726 So. 2d 96, 104 (Miss. 1998).

[13] Id.

[14] Sanderson Farms, 848 So. 2d at 836.

[15] We reject as meritless Lewis's claim that there exists no valid agreement to arbitrate between the parties.  There is no question that the PRP was incorporated into the disability policies between Woodmen and Lewis.  First, both of Lewis's policies contain provisions that expressly incorporate "any amendments" — which the PRP was — to Woodmen's Articles of Incorporation and the Constitution.  Second, there is no record evidence that a majority of the voting members did not approve the PRP as an amendment to the Constitution.  The district court correctly determined that there exists a valid agreement to arbitrate between the parties.

initiating) arbitration. Clearly equating the PRP's use of "claims" with "lawsuits," Lewis maintains that the plain language of the PRP requires arbitration only for claims brought — actions filed — by members or policy holders against the Society and not for claims brought by the Society against its members.[16] Woodmen counters that reading the PRP to bind Woodmen's members only and not itself is a crabbed interpretation of its procedure, which does not comport with the Woodmen's fraternal nature or with settled federal law favoring arbitration and interpreting arbitration clauses expansively.

The express language of the contract between Lewis and Woodmen requires arbitration of a member's claim when that member asserts a "claim for damages, or claims any form of redress for a violation of his or her individual rights or a denial of individual privileges or benefits which he or she claims as a member or benefit certificate owner or beneficiary." It does not, though it easily could have, refer to claims brought by Woodmen or even by "the parties." The language of the contract consistently refers only to claims brought by members and/or beneficiaries.

---

[16] Lewis also attacks Woodmen's motion to compel arbitration on the merits. Specifically, Lewis argues that Woodmen did not properly invoke the procedure before asking for arbitration and that Woodmen did not comply with Lewis's request for discovery under the procedure. Woodmen correctly points out that our role is only to ascertain whether the arbitration clause covers the claims at issue, not to consider the merits of the case. See Snap-On Tools Corp. v. Mason, 18 F.3d 1261, 1268 (5th Cir. 1994). Therefore, we need not consider Lewis's attacks on Woodmen's compliance with its own PRP.

Woodmen points out that Lewis repeatedly asserted claims against it between February and November 2001 in the correspondence between his counsel and Woodmen's counsel. Lewis counters by arguing that he never made a claim against Woodmen because he had no need to do so —— Woodmen consistently paid his disability benefits, albeit under a reservation of rights. This is not entirely so. The correspondence in the record demonstrates, <u>inter alia</u>, a dispute over the timeliness of Woodmen's payment of Lewis's benefits. Lewis repeatedly asked that Woodmen tender to him the $5,050 in individual disability benefits that were due at the beginning of each month. Lewis also disputed Woodmen's right to have a third-party —— Monarch —— adjust or administer Lewis's claims. In addition, Lewis continually insisted that the "bad faith actions by Woodmen of the World cease and desist." Lewis's references to bad faith actions targeted Woodmen's repeated requests for further medical evidence to support Lewis's claims of dementia. And, Lewis asserted to Woodmen that because it was paying his benefits under a reservation of rights, it would be liable for his attorneys' fees: "Request is further made that Woodmen of the World inform Roland Lewis that it will pay all reasonable attorney's fees to date as necessitated by Woodmen of the World's continuing assertion of 'Reservation of Rights,' including possible demand for repayment."

Lewis's repeated demands in the correspondence to Woodmen fit well within the PRP's definition of "claim[ing] <u>any form</u> of redress

for a violation of his or her individual rights or a denial of individual privileges or benefits which he or she claims as a member or benefit certificate owner or beneficiary."[17]  We do not read the policy language — "claims for damages" or "claims any form of redress" — so narrowly as to require a legal claim, i.e., Lewis did not have to file suit first for his claims to fall within the language of the PRP.[18]  Lewis's claims — his repeated requests for "redress" as a benefit policyholder — generated this protracted dispute with Woodmen.  The effect of Lewis's behavior in continuing to make claims without either filing suit or invoking arbitration forced Woodmen's hand: Lewis left Woodmen no choice but to seek judicial constraint to compel arbitration of claims that it disputed with Lewis. This in turn required Woodmen to include its own claims against Lewis in the event that arbitration was not compelled.

Bearing in mind the strong federal policy in favor of arbitration, and our duty to resolve doubts of an arbitration clause's coverage in favor of arbitration, we hold that Lewis's demands clearly fall within the meaning of "claims" as used in the PRP and that the district court erred when it denied Woodmen's

_____

[17] Emphasis added.

[18] Our conclusion is buttressed by the broad language in Section 2(a) of the PRP entitled "Purpose:" "The purpose of this Section 2 is to provide opportunities for members and benefit certificate owners and beneficiaries to be promptly heard and to seek fair resolution of <u>any disputes regarding any individual rights</u> . . . ." (emphasis added).

motion to compel arbitration.  Accordingly, we reverse the district court's denial of Woodmen's motion to compel arbitration, and we render judgment compelling arbitration of the dispute between Woodmen and Lewis.

### 4.  Counterclaim and Third-Party Complaint

Woodmen explains that the claims that Lewis now proffers in his counterclaim against Woodmen and his third-party complaint against Monarch, are the very claims that must be arbitrated.[19] Lewis tries to avoid this by explaining that he was required by the Federal Rules of Civil Procedure to assert mandatory counter claims and third party claims in a civil proceeding, lest he risk forfeiting those claims.[20]

Although the district court did not reach this issue because it denied Woodmen's motion to compel on the basis of Woodmen's claims only, we find the record before us complete as to this question.   Thus, a remand would only prolong unnecessary

---

[19] A non-signatory party to an agreement may compel arbitration against a signatory party if the events in dispute are covered by the arbitration agreement.  Monarch may thus properly request arbitration of Lewis's claims against it.  See  Texaco Exploration & Prod. Co. v. AmClyde Engineered Prods. Co., 243 F.3d 906, 909 (5th Cir. 2001).

[20] See Fed. R. Civ. P. 13(a), 14.  See also Montgomery Elevator Co. v. Building Engineering Servs. Co., 730 F.2d 377, 380 (5th Cir. 1984).   Rule 14 does not compel Lewis to file a third-party complaint against Monarch, though it is certainly in his interests to do so.

litigation.[21]  Lewis's counterclaim against Woodmen and his third-party complaint against Monarch, for "all sums due him under the certificates of insurance," punitive damages, and attorneys' fees, are indisputably "claims for damages" and claims for redress under the PRP. Further, Lewis has cited to no legal authority —— and we have found none —— to support the argument that an otherwise arbitrable claim becomes non-arbitrable simply because it is asserted as a compulsory counterclaim under the Federal Rules of Civil Procedure.  Indeed, such a contention is illogical as well, inasmuch as these are the very "claims" that required Woodmen to seek to compel arbitration in the first place.  Accordingly, Lewis must arbitrate his counterclaim and his third-party claims.

### 5.    Unconscionability and Waiver

Lewis also argues that the PRP is unconscionable and that Woodmen waived its right to compel arbitration.  As Lewis did not raise the issue of unconscionability in the district court, we will not consider it.[22]   Neither shall we consider the issue of waiver.

---

[21] See, e.g., Matter of Zedda, 103 F.3d 1195, 1206 (5th Cir. 1997) ("This conclusion follows as a matter of law from the undisputed documents and testimony, rendering remand for further finding unnecessary.").

[22] In re Fairchild Aircraft Corp., 6 F.3d 1119, 1128 (5th Cir. 1993) ("In short, the argument must be raised to such a degree that the trial court may rule on it . . . The argument here was not even identified by name, much less advocated."); United States v. Drobny, 955 F.2d 990, 995 (5th Cir. 1992) ("As a general principle of appellate review, this Court will not consider a legal issue or theory not presented to the [federal district court]." (citations and quotations omitted)).

Although Lewis perfunctorily raised waiver as an affirmative defense in his answer to Woodmen's complaint, he failed to brief the issue in his Answer to Motion to Compel Arbitration before the district court.[23]

### III. CONCLUSION

When we step back from Woodmen's and Lewis's individually-asserted claims and analyze them in a broader context, we see that Woodmen's claims against Lewis, and Lewis's claims against both Woodmen and Monarch, are nothing more than opposite sides of the same coin. In other words, the individual claims form part of a larger, all-encompassing and protracted dispute over Lewis's claim for disability benefits that began and evolved during the correspondence between the parties. Even though we recognize that the parties, through cautious lawyering, preserved their claims judicially once Woodmen filed suit, it is not the individual claims as such that we send to arbitration but the entire dispute over Lewis's claim for benefits.

We reverse the district court's order denying Woodmen's motion to compel arbitration of its claims against Lewis and render judgment for Woodmen, compelling Lewis to arbitrate these matters. Our reversal of the district court includes reversal of its order denying Woodmen's motion to compel arbitration of Lewis's

---

[23] Drobny, 955 F.2d at 995.

12

counterclaim and third-party claims, and we hold that these claims are part and parcel of the dispute to be arbitrated.

REVERSED AND RENDERED.