UNITED STATES of America, Plaintiff,

v.

Evan CALLANAN, Sr., Evan Callanan, Jr., and Sam Qaoud, Defendant.

No. 83–60101–DT.

United States District Court,
E.D. Michigan, S.D.

Oct. 9, 1987.

488

Sheldon N. Light, Detroit, Mich., for plaintiff.

Nicholas Smith, Southfield, Mich., for defendant Evan H. Callanan, Sr.

Harold Gurewitz, Detroit, Mich., for defendants Evan H. Callanan, Jr. and Sam Qaoud.

## OPINION

GILMORE, District Judge.

Defendants Evan Callanan, Sr., Evan Callanan, Jr., and Sam Qaoud bring this action under 28 U.S.C. § 2255 to vacate their convictions in this case. They base their collateral attacks on *McNally v. United States,* — U.S. —, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987), which they claim invalidates the mail fraud theory upon which they were charged and convicted, and requires that their convictions be vacated.

All of these defendants were convicted in 1983 in this court of conspiracy to violate RICO (Count I), and substantive violations of RICO (Count II). Callanan, Jr. was convicted of three counts of mail fraud (Counts IV–VI), and Callanan, Sr. was convicted of one count of mail fraud (Count VI). In addition, Callanan, Jr. was convicted of obstructing a criminal investigation (Count VII), and, in a separate indictment, joined for trial with the other charges, Callanan, Jr. was convicted of making false declarations before a grand jury.

■ Callanan, Sr. received concurrent sentences of ten (10) years each on the RICO charges and five (5) years on the mail fraud charge. Callanan Jr. received concurrent sentences of eight (8) years each on the RICO charges and five (5) years on the other counts. Qaoud received concurrent sentences of three (3) years on

the RICO charges. Their convictions were affirmed by the Court of Appeals in *United States v. Qaoud,* 777 F.2d 1105 (6th Cir. 1985), *cert. denied,* — U.S. —, 106 S.Ct. 1499, 89 L.Ed.2d 899 (1986). There was a limited remand from the Court of Appeals for this Court to reconsider whether concurrent RICO sentences (conspiracy and substantive RICO) should be vacated in light of *Ball v. United States,* 470 U.S. 856, 105 S.Ct. 1668, 84 L.Ed.2d 740 (1985). This court determined the conspiracy and substantive RICO charges required different proofs, and *Ball* did not require the sentences in question to be vacated. The Sixth Circuit affirmed in *United States v. Callanan,* 810 F.2d 544 (6th Cir.1987). A petition for certiorari was filed on April 13, 1987.[1]

■ All defendants base their collateral attack on *McNally.* In that case, the Court reversed defendants' convictions for mail fraud under § 1341, which had been based upon jury instructions that allowed the jury to convict based upon a scheme to defraud the citizens in the Commonwealth of Kentucky of their intangible right to have the Commonwealth's affairs conducted honestly. After analyzing the mail fraud statute and its sparse legislative history, and after noting that the jury had not been required to find that Kentucky had been defrauded of money or property (or control over the spending of money), the Court held that "the jury instruction on the substantive mail fraud count permitted a conviction for conduct not within the reach of § 1341." — U.S. at —, 107 S.Ct. at 2882, 97 L.Ed.2d at 303.

The Court held that the language and legislative history of 18 U.S.C. § 1341 demonstrated that it is limited in scope to the protection of money or property rights, and does not extend to the intangible right of citizenry to good government.

*McNally* announced a new interpretation of the mail fraud statute that is clearly at variance with all previous circuit court deci-

1. Even though a petition for certiorari is pending, defendants' case is final for purposes of this opinion. The basis for the petition does not go to the substance of the conviction as is obvious from the fact that defendants have been in prison for almost three years since their conviction. All direct appeals have been exhausted.

sions concerning the intangible rights theory of mail fraud. The federal mail fraud statute, 18 U.S.C. § 1341, prohibits the use of the mails to execute "any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises." Prior to *McNally*, every United States Circuit Court of Appeals that discussed the issue uniformly interpreted "any scheme or artifice to defraud" to include a scheme to defraud citizens of their intangible rights to honest and impartial government.[2]

It is the contention of defendants that they were convicted under an erroneous interpretation of § 1341. They claim there is no difference in the jury instructions in this case and *McNally* because the jury was expressly instructed that the mail fraud statute protected the public's right to honest and impartial government, and that the jury need not find actual tangible property loss. The basic question for decision by this court is whether *McNally* is to be applied retroactively because, if it is not, there is no basis for the § 2255 petitions of defendants.

Defendants rely upon *Davis v. United States*, 417 U.S. 333, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974), as supporting retroactivity of *McNally*. In *Davis*, petitioner, after being declared a delinquent, was ordered to report for induction pursuant to Selective Service regulations, which permitted the ordering of a declared delinquent to report for induction even though he had not been found acceptable for military service. When he failed to report, he was prosecuted and convicted. He appealed, and the case was remanded in light of a then recent Supreme Court case, *Gutknecht v. United States*, 396 U.S. 295, 90 S.Ct. 506, 24 L.Ed.2d 532 (1970), which held that Selective Service regulations that accelerated the induction of delinquent registrants by shifting them to first priority in the order of call were punitive in nature, and were without legislative sanction.

The district court in *Davis* concluded that *Gutknecht* did not affect the conviction, and the Court of Appeals affirmed. While petitioners' petition for certiorari was pending, the Court of Appeals decided *United States v. Fox*, 454 F.2d 593 (9th Cir.1971), wherein, in light of *Gutknecht*, the Ninth Circuit reversed a conviction on facts almost identical to those in *Davis*. The Supreme Court subsequently denied certiorari.

After beginning his sentence, petitioner brought a proceeding under 28 U.S.C. § 2255, asserting that the *Fox* decision effected a change in the law of the Ninth Circuit, and that its holding required his conviction be set aside. The district court denied relief, and the Ninth Circuit affirmed.

On certiorari, the Supreme Court reversed and remanded. First, the Court held that the Ninth Circuit erred in holding that "the law of the case," as determined in the earlier appeal from the petitioner's conviction, precluded him from securing relief under § 2255 on the basis of an intervening change in the law. The Court noted their

---

2. *See, e.g. United States v. Bruno*, 809 F.2d 1097, 1105 (5th Cir.) *cert. denied,* —— U.S. ——, 107 S.Ct. 2198, 95 L.Ed.2d 853 (1987); *United States v. Gray*, 790 F.2d 1290, 1295–96 (6th Cir.1986); *rev'd sub nom. McNally v. United States,* —— U.S. ——, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987); *United States v. Price*, 788 F.2d 234, 237 (4th Cir.1986), *cert. granted and judgment vacated, sub nom. McMahon v. United States,* —— U.S. ——, 107 S.Ct. 3254, 97 L.Ed.2d 754 (1987); *United States v. Murphy*, 768 F.2d 1518, 1530 (7th Cir.1985); *United States v. Clapps*, 732 F.2d 1148, 1152 (3d Cir.), *cert. denied,* 469 U.S. 1085, 105 S.Ct. 589, 83 L.Ed.2d 699 (1984); *United States v. Margiotta*, 688 F.2d 108, 121 (2d Cir. 1982), *cert. denied,* 461 U.S. 913, 103 S.Ct. 1891, 77 L.Ed.2d 282 (1983); *United States v. Curry,* 681 F.2d 406, 410–11 (5th Cir.1982); *United States v. Reece*, 614 F.2d 1259, 1261 (10th Cir. 1980); *United States v. Louderman*, 576 F.2d 1383, 1388 (9th Cir.), *cert. denied,* 439 U.S. 896, 99 S.Ct. 257, 58 L.Ed.2d 243 (1978); *United States v. Brown*, 540 F.2d 364, 374 (8th Cir. 1976); *United States v. Rauhoff*, 525 F.2d 1170, 1175–76 (7th Cir.1975); *United States v. Bush*, 522 F.2d 641, 648 (7th Cir.1975), *cert. denied,* 424 U.S. 977, 96 S.Ct. 1484, 47 L.Ed.2d 748 (1976); *United States v. Isaacs*, 493 F.2d 1124, 1150 (7th Cir.), *cert. denied,* 417 U.S. 976, 94 S.Ct. 3184, 41 L.Ed.2d 1146 (1974); *Shushan v. United States*, 117 F.2d 110, 115 (5th Cir.), *cert. denied,* 313 U.S. 574, 61 S.Ct. 1086, 85 L.Ed. 1532 (1941).

opinion in *Sanders v. United States,* 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963), where the Court held, *inter alia,* "that even though the legal issue raised in a § 2255 motion was 'determined against the applicant on the merits of a prior application,' 'the applicant may [nevertheless] be entitled to a new hearing upon showing an intervening change in law.' " *Davis,* 417 U.S. at 342, 94 S.Ct. at 2303 (quoting *Sanders,* 373 U.S. at 17, 83 S.Ct. at 1078). "The same rule applies when the prior determination was made on direct appeal from the applicant's conviction, instead of in an earlier § 2255 proceeding, 'if the new law has been made ... since the trial and appeal.' " *Id.* (quoting *Kaufman v. United States,* 394 U.S. 217, 230, 89 S.Ct. 1068, 1076, 22 L.Ed.2d 227 (1969)).

The Court further stated:

This is not to say, however, that every asserted error of law can be raised on a § 2255 motion. ... We suggested that the appropriate inquiry was whether the claimed error of law was a "fundamental defect which inherently results in a complete miscarriage of justice," and whether "[i]t ... present[s] exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent."

.    .    .    .    .

In this case, the petitioner's contention is that the decision in *Gutknecht v. United States,* as interpreted and applied by the Court of Appeals for the Ninth Circuit in the *Fox* case after his conviction was affirmed, establishes that his induction order was invalid under the Selective Service Act and that he could not be lawfully convicted for failure to comply with that order. If this contention is well taken, then Davis' conviction and punishment are for an act the law does not make criminal. *There can be no room for doubt that such a circumstance "inherently results in a complete miscarriage of justice" and "present[s] exceptional circumstances."*

*Id.* 417 U.S. at 346–47, 94 S.Ct. at 2305–06 (emphasis added).

Basically, it is defendants' contention that, similar to *Davis,* they were convicted for an act that simply was not a crime, and never has been, and that, therefore, there was a complete miscarriage of justice. This case can be distinguished from *Davis,* however. In *Davis,* defendant had been convicted of an act that simply was not a crime because of a complete change in the law. Therefore, the Court in *Davis* felt there had been a complete miscarriage of justice. Such is not the case here. Not only was there evidence that the defendant Callanan, Sr. had committed intangible acts of mail fraud, as had the other defendants, there was evidence of direct pecuniary benefits to all three of the defendants. Therefore, the jury could have based its decision upon the finding of direct pecuniary benefit, which still serves as a basis for a mail fraud conviction, even though the intangible rights theory was among those used by the Government.[3]

Furthermore, on the RICO counts, there was evidence of several acts of bribery on the part of all three parties that could

---

**3.** Exactly what sort of property gain or loss will satisfy the statute is now uncertain, but it may be, as suggested by Justice Stevens in his *McNally* dissent, that:

When a person is being paid a salary for his loyal services, any breach of that loyalty would appear to carry with it some loss of money to the employer—who is not getting what he paid for. Additionally, "[i]f an agent receives anything as a result of his violation of a duty of loyalty to the principal, he is subject to a liability to deliver it, its value, or its proceeds, to the principal." Restatement (Second) of Agency § 403 (1958). This duty may fulfill the Court's "money or property" requirement in most kickback schemes.

*McNally,* — U.S. at — n. 10, 107 S.Ct. at 2890 n. 10, 97 L.Ed.2d at 313 n. 10. Thus, to the extent that defendants now claim that their activities simply did not violate the mail fraud statute, they have interpreted *McNally* too broadly. If *McNally* is to help them, it is only because the jury instructions failed to require proof of gain or loss of money or property as part of the scheme to defraud under section 1341. This does not necessarily mean that the mail fraud charges in this case, if submitted to the jury on proper instructions, would not withstand challenge under *McNally.*

serve as a basis for the two predicate offenses required in RICO.

*Davis* simply is not controlling on this case because the underpinning of *Davis* is the fact that the act was no longer a crime. The underpinnings of this case show that there were many other acts, both in the RICO counts and in the mail fraud counts where money was exchanged, that provided a basis for mail fraud and predicate offense conviction under RICO based upon facts that were developed other than intangible rights facts under the mail fraud statute.

Moreover, since *Davis*, the Supreme Court has visited the question of retroactivity on at least two occasions. In *Griffith v. Kentucky*, —— U.S. ——, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987), the Court held that the rule of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), which held that the use of peremptory challenges to exclude blacks from a jury trying a black defendant may violate the Equal Protection Clause, was retroactively applicable to cases pending on direct review and not yet final.

In *Griffith*, which consolidated two cases, petitioners filed petitions for certiorari alleging that the prosecutor's use of peremptory challenges to strike prospective black jurors violated petitioner's right to equal protection and an impartial jury. Before the Court heard the petitions, *Batson* was decided. That case held that a state criminal defendant could establish a prima facie case of racial discrimination, violative of the Fourteenth Amendment, based upon the prosecutor's use of peremptory challenges to strike members of defendant's race from the jury, and that, once the prima facie showing was made, the burden shifted to the prosecution to come forth with a neutral explanation for these challenges.

In *Griffith*, the Court held that *Batson*, a newly declared constitutional rule applying to criminal cases, would be applied retroactively to cases pending on direct review. The Court held that "retroactivity analysis for convictions that have become final must be different from the analysis for convictions that are not final at the time the new decision is issued." —— U.S. at ——, 107 S.Ct. at 713, 93 L.Ed.2d at 657. And the Court defined "final" as a case "in which a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed, or a petition for certiorari finally denied." *Id.* n. 6. Hence, in the area of constitutional interpretation at least, *Griffith* held that the new rules are to be applied retroactively in cases pending on direct appeal, but not in those cases that have become final when the new decision was issued.

Justice Powell, in his concurrence in *Griffith*, stated that the only issue before the court was the "retroactivity of decisions pending on direct review."

> "[I]t was not necessary for the court to express an opinion with respect to habeas corpus petitions. As I read the court's opinion, this question is carefully left open until it is squarely presented. It is to be hoped that the court then will adopt the Harlan view of retroactivity in cases seeking relief on habeas petitions. Under that view, the habeas petitions generally should be judged according to the constitutional standards existing at the time of the conviction."

*Id.* at ——, 107 S.Ct. at 716, 93 L.Ed.2d at 662 (citation omitted).

Significantly, the majority opinion of the Court cited its previous decision in *Allen v. Hardy*, —— U.S. ——, 106 S.Ct. 2878, 92 L.Ed.2d 199 (1986) (per curiam), which held that the ruling in *Batson* did not apply retroactively to a case on federal habeas corpus review. It is thus clear that *Griffith* presents a bright-line rule. If the matter is still pending, a new constitutional interpretation will be applied retroactively. But, if the case has become final under the definition of "final" found in *Griffith* the new opinion will not necessarily be applied retroactively. *Allen v. Hardy* established a somewhat different rule for this situation. In *Allen*, the defendant had been charged with murder, and during trial defense counsel unsuccessfully moved to discharge the jury on grounds similar to those

in *Griffith.* The defendant was convicted and sentenced. The district court dismissed defendant's petition for writ of habeas corpus under 28 U.S.C. § 2254, and the Seventh Circuit denied defendant's request for a certificate of probable cause to appeal. Subsequently, the *Batson* decision was rendered.

Granting certiorari, the Supreme Court affirmed, holding that the decision in *Batson* would not be applied retroactively on collateral convictions that had become final before that decision was announced. ⸺ U.S. at ⸺, 106 S.Ct. at 2879, 92 L.Ed.2d at 204. In making a determination as to whether to apply opinions retroactively on collateral review under § 2255, the Court utilized a three-pronged test:

> In deciding the extent to which a decision announcing a new constitutional rule of criminal procedure should be given retroactive effect, the Court traditionally has weighed three factors. They are "(a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards." While a decision on retroactivity requires careful consideration of all three criteria, the Court has held that a decision announcing a new standard "is almost automatically nonretroactive" where the decision "has explicitly overruled past precedent." The rule in *Batson v. Kentucky* is an explicit and substantial break with prior precedent. In *Swain v. Alabama,* the Court held that, although the use of peremptory challenges to strike black jurors on account of race violated the Equal Protection Clause, a defendant could not establish such a violation solely on proof of the prosecutor's action at his own trial. *Batson* overruled that portion of *Swain,* changing the standard for proving unconstitutional abuse of peremptory challenges. Against that background, we consider whether the standard announced in *Batson* should be available on habeas review of petitioner's murder conviction.

*Id.* at ⸺, 106 S.Ct. at 2880, 92 L.Ed.2d at 204 (citations omitted).

The Court then proceeded to make an analysis that the three factors indicate, namely what the purpose to be served with the new standards would be, the extent of reliance of law enforcement officers on the old standards, and the effect on the administration of justice of retroactive application of the new standards. It concluded, after an analysis of these standards, that *Batson* should not be available to the petitioner on a federal habeas corpus review, and denied retroactive effect to *Batson.* Of significance was the following language of the Court:

> Similarly, retroactive application of the *Batson* rule on collateral review of final convictions would seriously disrupt the administration of justice. Retroactive application would require trial courts to hold hearings, often years after the conviction became final, to determine whether the defendant's proof concerning the prosecutor's exercise of challenges established a prima facie case of discrimination. . . . Many final convictions, therefore, would be vacated, with retrial "hampered by problems of lost evidence, faulty memory, and missing witnesses."

*Id.,* at ⸺⸺, 106 S.Ct. at 2881, 92 L.Ed.2d at 205–06.

In applying the three-pronged test of *Allen* to the instant case, it is clear to this court that *McNally* is not retroactive. Regarding the first factor, the Court in *Allen* notes that the fact that the new rule would have an impact on the accuracy of the trial does not compel a finding of retroactivity. The purpose to be served by the new standard weighs in favor of retroactivity only when the standard goes to the heart of the truth-finding function. Such is not the case here.

With reference to the second standard, namely the extent of the reliance by law enforcement authorities on the old standards, there is no question but that this standard weighs heavily in favor of nonretroactivity. Prior to *McNally,* courts uniformly held a scheme to defraud the citizens of a state or a governmental unit of

their intangible right to have the commonwealth affairs conducted honestly was a basis for a conviction under the mail fraud statute. *McNally* completely changed that law, and there was no indication in prior opinions of the Court, nor other legal writings, that the reliance by law enforcement authorities on the old standards was in any way misplaced.

As far as the third factor is concerned—the effect on the administration of justice of a retroactive application of the new standards—the language of the Court in *Allen v. Hardy* is particularly applicable. As that Court pointed out, retroactive application would require trial courts to hold hearings often years after the conviction became final to determine whether defendant's conviction was valid. Many final convictions would be vacated, with retrial seriously hampered by problems of lost evidence, faulty memory, and missing witnesses.

It is therefore clear that, under the rule of *Allen*, *McNally* is not retroactive on this habeas corpus proceeding.[4]

A bright-line test is applicable regarding cases pending on direct appeal under *Griffith*. Here, all direct appeals have been exhausted, and, therefore, under *Griffith*, *McNally* is not retroactive.[5] Under *Allen*, there is a three-part test that is more discretionary and fact specific as to whether or not a new rule should be applied retroactively, and its application can vary with

each case. However, it is clear here from the analysis above that *McNally* should not be retroactive. It should also be noted that the fact that *Allen* speaks of constitutional changes rather than cases involving statutory interpretation should make no difference. *See, e.g., Davis, supra,* 417 U.S. at 346, 94 S.Ct. at 2305 ("The Court did not suggest that any line could be drawn on the basis of whether the claim had its source in the Constitution or in the 'laws of the United States.' "). It is further clear to the Court that the principles of *Davis*, which require a complete miscarriage of justice for retroactivity, are not applicable here. *McNally* establishes, at most, that the defendants' mail fraud convictions rested on an erroneous jury instruction, not that their conduct was totally unpunishable under the mail fraud statute. Moreover, the mail fraud instructions given in the instant case were stipulated to by the defense at the time they were given.[6] The *Davis* analysis simply does not apply here because there has not been a fundamental miscarriage of justice in the convictions of these three people who were found guilty of very serious offenses, indicating a total violation of trust in the case of the two Callanans, and an utter disregard of the sanctity of the judiciary in the case of Qaoud. It is clear to the Court that *McNally* should not be applied retroactively in this case. This case is analogous to *Allen*, where the Court adopted a three-

**4.** The argument for nonretroactivity is strengthened where, as here, the new interpretation is a "clear break" from prior law. The "clear break" occurs where the new rule "explicitly overrules a past precedent" of the Supreme Court, or "disapproves a practice [the] Court has arguably sanctioned in prior cases," or "overturns a longstanding and widespread practice to which [the] Court has not spoken, but which a near-unanimous body of lower court authority has expressly approved." *United States v. Johnson,* 457 U.S. 537, 551, 102 S.Ct. 2579, 2588, 73 L.Ed.2d 202 (1982). The "clear break" exception appears to have been overruled in *Griffith*. —— U.S. at ——, 107 S.Ct. at 715, 93 L.Ed.2d at 661. However, *Griffith* only applies for cases pending on direct appeal. The Court in *Allen* recognized the "clear break" exception in the habeas corpus situation. —— U.S. at —— , 106 S.Ct. at 2880, 92 L.Ed.2d at 204 ("[A] decision announcing a new standard 'is almost automatically nonretroac-

tive' where the decision 'has explicitly overruled past precedent.' ").

**5.** It is important to note in *Davis* that, although the defendant was appealing through a writ of habeas corpus, the intervening change in the law occurred while defendant was still on direct appeal, not after he began serving his sentence. Hence, while the *Davis* case discusses the "fundamental miscarriage of justice" standard, the case falls within the reasoning of *Griffith* to a limited extent. In contrast, defendants here had exhausted their direct appeals, their convictions were final, and they were serving their sentences. Only after they spent almost two years in prison was *McNally* decided.

**6.** In the absence of this agreement, this court may well have framed the jury instructions, based on the evidence presented at trial, in a manner that would satisfy *McNally*.

part analysis and denied habeas corpus relief by not applying a new constitutional rule retroactively. The case is not like *Davis*, where there was a fundamental miscarriage of justice. *McNally* will not be applied retroactively in this case, and the petition for habeas corpus as to all three petitioners under 28 U.S.C. § 2255 is denied.[7]

---

**7.** Defendants have also filed motions for bail pending this court's ruling on the motion to vacate. Since *McNally* should not be applied retroactively, the question of bail is moot.