UNITED STATES of America

v.

**George Vernon HANSEN, Defendant.**

**Crim. A. No. 83–00075 (JHG).**

United States District Court,
District of Columbia.

Dec. 5, 1995.

---

Lee J. Radek, Chief, Susan J. Park and Miles F. Ehrlich, Trial Attorneys, Public Integrity Section, Criminal Division, U.S. Dept. of Justice, Washington, DC, for United States.

Nathan Lewin, Stephen L. Braga, Miller, Cassidy, Larroca & Lewin, Washington, DC, for Mr. Hansen.

## MEMORANDUM OPINION AND ORDER

JOYCE HENS GREEN, District Judge.

The petitioner moves this Court, pursuant to the federal habeas corpus statute, 28 U.S.C. § 2255, or, in the alternative, under a writ of error *coram nobis*, to set aside his 1984 conviction under the False Statements Act, 18 U.S.C. § 1001. Although the petitioner has served the sentence imposed by this Court, he is currently in custody serving a sentence imposed in 1993 by another federal court stemming from a 1992 conviction for 45 counts of bank fraud. The 1993 sentence was enhanced under the Sentencing Guidelines by his 1984 conviction in this Court.

For the reasons explained below, the Court will grant the writ of error *coram nobis:* the 1984 conviction and sentence will be vacated. The Court will also grant the request for repayment of the fines aggregating $40,000. However, the Court will deny the petitioner's request to amend his 1993

sentence and his request for the payment of interest. The requested relief under 28 U.S.C. § 2255 to amend the 1992 conviction must be presented to the federal court that imposed the 1993 sentence.

## I. *Background*

The petitioner, George Vernon Hansen, represented the Second Congressional District of Idaho between 1965 and 1969 and from 1975 until the election following his 1984 conviction. Because of his omissions in financial disclosure statements filed under the Ethics in Government Act of 1978 ("EIGA"), Pub.L. No. 95–521, 92 Stat. 1824 (Oct. 26, 1978) (codified as amended in scattered sections of Titles 2, 5, 18, 26 and 28 U.S.C.), the petitioner was convicted by jury of making false statements in matters within the jurisdiction of a department or agency of the United States in violation of 18 U.S.C. § 1001. Specifically, the petitioner was convicted of failing to disclose on his EIGA forms a $50,000 bank loan to his spouse for reporting year 1978, a loan which was cosigned by silver trader Nelson Bunker Hunt; a $84,475 silver commodities profit for 1979; a loan in excess of $61,000 from Nelson Bunker Hunt for 1980; and $135,000 in loans from private individuals for 1981.

Prior to his conviction, the petitioner challenged the applicability of 18 U.S.C. § 1001 to the omissions on his EIGA forms, but this Court denied his motion to dismiss. *United States v. Hansen,* 566 F.Supp. 162, 163 (D.D.C.1983).[1] At the time, the law clearly established that 18 U.S.C. § 1001 embraced false statements made to the House of Representatives. *United States v. Bramblett,* 348 U.S. 503, 509, 75 S.Ct. 504, 508, 99 L.Ed. 594 (1955), *overruled by Hubbard v. United States,* —— U.S. ——, 115 S.Ct. 1754, 131 L.Ed.2d 779 (1995); *see also United States v. Diggs,* 613 F.2d 988, 999 (D.C.Cir.1979), *cert. denied,* 446 U.S. 982, 100 S.Ct. 2961, 64 L.Ed.2d 838 (1980). On appeal, the U.S.

Court of Appeals for the District of Columbia Circuit upheld the petitioner's 1984 conviction on all counts. *United States v. Hansen,* 772 F.2d 940, 943 (D.C.Cir.1985) (Scalia, J.) (The "sweeping language [of 18 U.S.C. § 1001] clearly embraces the omissions on Hansen's EIGA forms." (internal quotations and citations omitted)). The Court of Appeals' decision was based on its understanding of *Bramblett* and of how *Bramblett* applied to the petitioner's EIGA omissions: "The House Committee with which the forms were filed is a 'department' for purposes of § 1001, since that term was 'meant to describe the executive, legislative and judicial branches of the Government.'" *Id.* The Supreme Court denied the petition for a writ of certiorari, *Hansen v. United States,* 475 U.S. 1045, 106 S.Ct. 1262, 89 L.Ed.2d 571 (1986), and the petitioner's motions for a new trial and other relief were later denied by this Court. As a result of his conviction, the petitioner served twelve months in a federal prison and paid a fine of $10,000 on each of the four counts, aggregating $40,000.

On March 12, 1992, the petitioner was indicted and later convicted on 45 counts of bank fraud at a jury trial in the United States District Court for the District of Idaho. *See* Petitioner's Motion to Vacate, Set Aside, or Correct Sentence Under 28 U.S.C. § 2255, or, in the Alternative, Petition for a Writ of Error Coram Nobis ("Petitioner's Motion"), at 3. On March 19, 1993, the petitioner was sentenced by Judge Edward J. Lodge, United States District Court for the District of Idaho, to 48 months imprisonment pursuant to the Sentencing Guidelines, which included his 1984 conviction in the sentencing calculus. *Id.* The petitioner remains in federal custody. *Id.*

On May 15, 1995, the Supreme Court of the United States overruled *United States v. Bramblett,* 348 U.S. 503, 75 S.Ct. 504, 99 L.Ed. 594 (1955). *Hubbard v. United States,*

---

1. Before this Court and on appeal, the petitioner did not challenge the Supreme Court's interpretation of 18 U.S.C. § 1001 in *United States v. Bramblett,* 348 U.S. 503, 75 S.Ct. 504, 99 L.Ed. 594 (1955), which applied section 1001 to false statements made to the House of Representatives. Instead, he argued that section 1001 was inapplicable to EIGA violations because, in en-

acting EIGA, Congress intended that the financial disclosure violations be subject only to civil sanctions. His argument was rejected. *See United States v. Hansen,* 566 F.Supp. 162, 163 (D.D.C.1983), *aff'd,* 772 F.2d 940, 943 (D.C.Cir. 1985), *cert. denied,* 475 U.S. 1045, 106 S.Ct. 1262, 89 L.Ed.2d 571 (1986).

— U.S. ——, ——, ——, 115 S.Ct. 1754, 1758, 1765, 131 L.Ed.2d 779 (1995). In *Bramblett,* which involved false statements made to Congress, the Court had applied section 1001 broadly, making it applicable to false statements made to all three branches of the government. In *Hubbard,* the Supreme Court dramatically limited the reach of 18 U.S.C. § 1001. The petitioner cites *Hubbard* as the basis for the relief he requests from this Court. *See* Petitioner's Motion, at 3.

As relief, the petitioner moves this Court to vacate his 1984 conviction and sentence; to order a refund of the fine that he paid aggregating $40,000, with interest; and to order that the term of his imprisonment be credited to the sentence that he is currently serving as a result of his 1992 conviction for bank fraud in the United States District Court for the District of Idaho.

## II. *Discussion*

█ The petitioner has requested relief under the federal habeas corpus statute, 28 U.S.C. § 2255, or, in the alternative, under a writ of error *coram nobis.* This Court has no jurisdiction to provide the habeas relief requested under 28 U.S.C. § 2255. Because a prisoner may only challenge the sentence for which the prisoner is "in custody" at the time of the habeas challenge, the request for relief on this basis will be denied. *Maleng v. Cook,* 490 U.S. 488, 492–93, 109 S.Ct. 1923, 1926, 104 L.Ed.2d 540 (1989); *Clifton v. United States,* 371 F.2d 354, 355 n. 2 (D.C.Cir.1966), *cert. denied,* 386 U.S. 995, 87 S.Ct. 1312, 18 L.Ed.2d 341 (1967). However, this Court has jurisdiction under the All Writs Act, 28 U.S.C. § 1651(a), to consider a petition for a writ of error *coram nobis.* *United States v. Morgan,* 346 U.S. 502, 506, 74 S.Ct. 247, 250, 98 L.Ed. 248 (1954); *United States v. Ayala,* 894 F.2d 425, 427–28 (D.C.Cir.1990).

█ The writ of error *coram nobis* arises from the common law and is an equitable tool for federal courts to "fill the interstices of the federal post-conviction remedial framework." *Ayala,* 894 F.2d at 428. Through a writ of error *coram nobis,* the federal judge who imposed a sentence has the discretionary power to set aside an underlying conviction and sentence which, for a valid reason, should never have been entered. Relief must be sought in the court in which the sentence was imposed. *Morgan,* 346 U.S. at 507 n. 9, 74 S.Ct. at 250 n. 9. Unlike the "in custody" limitation of the habeas statute, a petitioner may collaterally attack a federal conviction under this common law writ even though the petitioner is no longer serving a sentence pursuant to that conviction. *Id.* at 506–10, 74 S.Ct. at 249–52; *United States v. Drobny,* 955 F.2d 990, 996 (5th Cir.1992); *Ayala,* 894 F.2d at 427–28. *See generally* 11 Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 2867, at 394–95 (1995). The federal courts have broad equitable powers to order relief under a writ of error *coram nobis,* but relief should only be granted under "circumstances compelling such action to achieve justice," *Morgan,* 346 U.S. at 511, 74 S.Ct. at 252, and where other statutory remedies are not available. *Id.*

█ Whether to grant relief under a writ of error *coram nobis* is a decision committed to the discretion of the Court; federal judges may exercise their discretion by granting relief to correct serious defects underlying the conviction or sentence if those defects were not correctable on appeal or where exceptional circumstances otherwise justify such relief. *United States v. McCord,* 509 F.2d 334, 341 (D.C.Cir.1974), *cert. denied,* 421 U.S. 930, 95 S.Ct. 1656, 44 L.Ed.2d 87 (1975); *see Laughlin v. United States,* 474 F.2d 444, 451 (D.C.Cir.1972), *cert. denied,* 412 U.S. 941, 93 S.Ct. 2784, 37 L.Ed.2d 402 (1973) (in the D.C. Circuit, habeas corpus standards generally apply in reviewing writs of error *coram nobis* ). *Cf. Drobny,* 955 F.2d at 996 (in the 5th Circuit, standard of review for a petition of writ of error *coram nobis* is more strict than that applicable to habeas corpus).

█ Some circuits have relied upon a four-part analysis to assist the courts in applying their discretion: relief is appropriate where "(1) a more usual remedy is not available; (2) valid reasons exist for not attacking the conviction earlier; (3) adverse consequences exist from the conviction sufficient to satisfy

the case or controversy requirement of Article III; and (4) the error is of the most fundamental character." *Hirabayashi v. United States,* 828 F.2d 591, 604 (9th Cir. 1987); *see also Klein v. United States,* 880 F.2d 250, 254 (10th Cir.1989); *United States v. Osser,* 864 F.2d 1056, 1059–60 (3rd Cir. 1988); *United States v. Mandel,* 862 F.2d 1067, 1077 (4th Cir.1988), *cert. denied,* 491 U.S. 906, 109 S.Ct. 3190, 105 L.Ed.2d 699 (1989). Finding this analysis to be both helpful and consistent with the law in this Circuit, the Court has applied it below in analyzing the petitioner's request for a writ of error *coram nobis.*

■ The first three elements require little discussion. First, it is clear that no other source of relief is available to the petitioner. While 28 U.S.C. § 2255 provides the exclusive remedy for a prisoner to attack a conviction while "in custody" serving the sentence resulting from that conviction, *Maleng,* 490 U.S. at 492, 109 S.Ct. at 1926, the writ of error *coram nobis* is the proper remedy after the sentence has been served. *Morgan,* 346 U.S. at 511, 74 S.Ct. at 252; *Clifton,* 371 F.2d at 355 n. 2; *see also Drobny,* 955 F.2d at 996. The petitioner has long since exhausted his usual appeal rights and has completed serving the sentence resulting from his 1984 conviction, thus eliminating the possibility of federal habeas corpus relief under 28 U.S.C. § 2255. The writ of error *coram nobis* is his only remaining remedy.

Second, until the Supreme Court's decision in *Hubbard,* the law under *Bramblett* appeared to be clear, offering the petitioner no hope of relief on this theory. *See Smith v. Murray,* 477 U.S. 527, 537, 106 S.Ct. 2661, 2667, 91 L.Ed.2d 434 (1986) (review appropriate if claim previously was not reasonably available); *Reed v. Ross,* 468 U.S. 1, 16–17, 104 S.Ct. 2901, 2910–11, 82 L.Ed.2d 1 (1984) (state of law did not offer a reasonable basis to challenge jury instruction); *United States v. Frady,* 456 U.S. 152, 167–68, 102 S.Ct. 1584, 1594, 71 L.Ed.2d 816 (1982) (to obtain post-conviction relief, petitioner must show cause excusing procedural default and must demonstrate actual prejudice). The Supreme Court's decision in *Bramblett* was not ambiguous; until *Hubbard,* the petitioner

had no reason to believe that the *Bramblett* decision was anything but good law. *See, e.g., Hansen,* 772 F.2d at 943 (In citing *Bramblett,* then-Judge Scalia stated that the "sweeping language [of 18 U.S.C. § 1001] clearly embraces the omissions on Hansen's EIGA forms." (internal quotations and citations omitted)).

Third, because of the criminal history element of the Sentencing Guidelines, the petitioner is clearly suffering adverse consequences from the prior conviction sufficient to satisfy the threshold "case or controversy" requirement of Article III. *See United States v. Castro,* 26 F.3d 557, 559 (7th Cir. 1994) (petitioner must "demonstrate that he is suffering civil disabilities as a consequence of the criminal conviction") (quoting *United States v. Marcello,* 876 F.2d 1147, 1154 (5th Cir.1989)); *United States v. Keane,* 852 F.2d 199, 204 (7th Cir.1988), *cert. denied,* 490 U.S. 1084, 109 S.Ct. 2109, 104 L.Ed.2d 670 (1989) (neither a "strong emotional interest" in correcting prior conviction nor the mere fact that petitioner paid a fine is sufficient to satisfy Article III; petitioner must be burdened by continuing disabilities); *Hirabayashi,* 828 F.2d at 606 (presumption of adverse collateral consequences stemming from misdemeanor conviction sufficient to satisfy Article III). The petitioner's 1993 sentence was enhanced by the 1984 felony conviction; because he remains in custody serving a sentence that was enhanced by the 1984 conviction, the collateral consequences stemming from that conviction are sufficient to satisfy the constitutional prerequisites established by Article III.

The fourth issue, and the principal question for this Court, is whether the Supreme Court's decision in *Hubbard* transformed the petitioner's conviction under 18 U.S.C. § 1001 to an error "of the most fundamental character." *Morgan,* 346 U.S. at 512, 74 S.Ct. at 253. The government suggests that it does not, because *Hubbard* did not change the law as it applies to false statements made to Congress' administrative offices. *See* Government's Opposition to Petitioner's Motion to Vacate, Set Aside, or Correct Sentence Under 28 U.S.C. § 2255, or, in the Alternative, Petition for a Writ of Error Coram

**694**

Nobis ("Government's Opposition"), at 2. According to the government's argument, because the explicit issue before the Supreme Court in *Hubbard* involved falsehoods filed in Bankruptcy Court, *Hubbard*'s holding should be narrowly construed: specifically, it should not be construed to decriminalize the conduct for which the petitioner was convicted in 1984. Under this view, the petitioner's conduct would still be subject to prosecution today. Therefore, following this logic, the petitioner was validly convicted, properly served his sentence, and no compelling circumstances justify relief under a writ of error *coram nobis*, simply because there was no error.

In this case, the availability of relief under a writ of error *coram nobis* turns upon whether the Supreme Court's decision in *Hubbard* decriminalized the petitioner's conduct and, if so, whether *Hubbard* should be retroactively applied. Although the government is silent regarding whether *Hubbard* should be applied retroactively, its application of *Hubbard* to the facts of this case is at odds with the construction of *Hubbard* in this Circuit. *See United States v. Rostenkowski,* 59 F.3d 1291, 1301 (D.C.Cir.1995), *reh'g denied,* 68 F.3d 489 (1995); *United States v. Dean,* 55 F.3d 640, 658–59 (D.C.Cir.1995), *reh'g en banc denied,* Sept. 13, 1995.

The facts in *Hubbard,* and the Supreme Court's reasoning, are the key to understanding the government's argument. Hubbard was charged with making false statements to the Bankruptcy Court in connection with Chapter 7 bankruptcy proceedings. *Hubbard,* —— U.S. at ——, 115 S.Ct. at 1757. At trial, based upon *Bramblett,* the District Court instructed the jury that a bankruptcy court was a *"department* of the United States" within the meaning of 18 U.S.C. § 1001. *Id.* (emphasis added). Hubbard was subsequently convicted, a conviction which was affirmed on appeal. *Id.* The Supreme Court granted certiorari because of a split in the circuits regarding the existence of the "judicial function" exception to 18 U.S.C. § 1001. *Id.*

In construing section 1001,[2] the Supreme Court held that a federal court was neither an agency nor a department within the meaning of the statute. *Id.,* at —— – ——, 115 S.Ct. at 1757–58. In reaching this result, the Court first addressed its prior decision in *Bramblett,* in which it had upheld the conviction of a former Member of Congress who had made false statements to the Disbursing Office of the House of Representatives. The *Bramblett* Court had construed the word "department, as used in § 1001, ... to describe the executive, legislative and judicial branches of the Government." *Id.,* at ——, 115 S.Ct. at 1758 (quoting *Bramblett,* 348 U.S. at 509, 75 S.Ct. at 508) (internal quotations omitted). Although *Bramblett* involved false statements made to Congress and *Hubbard* involved false statements made to the judicial branch, the vitality of the holding in *Bramblett* was squarely before the Supreme Court in *Hubbard.* The Court did not equivocate: "We think *Bramblett* must be acknowledged as a seriously flawed decision. Significantly, the *Bramblett* Court made no attempt to reconcile its interpretation with the usual meaning of 'department.' " *Id.*

The *Hubbard* Court attributed the *Bramblett* Court's errors to a misinterpretation of the statute's history, which was based upon on false statements made to the executive branch, and to a flawed interpretive methodology that failed to give effect to the statute's plain meaning: "In *Bramblett,* the Court's method of analysis resulted in a decision that is at war with the text of not one, but two different Acts of Congress." *Id.,* —— U.S. at ——, 115 S.Ct. at 1761.

In this case, the government argues that the *Hubbard* Court's reasoning, which was based on the narrow statutory definition of "department," nevertheless allows for the definition of "agency" to be construed broadly. In *Hubbard,* as in *Bramblett,* the Su-

---

**2.** 18 U.S.C. § 1001 provides:
Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both.

preme Court's primary attention was in fact directed to the definition of department. Based upon the plain text of section 1001, coupled with the definition of department in 5 U.S.C. § 101 and the limiting language of 18 U.S.C. § 6,[3] the Court held that the "context" was insufficiently clear to depart from the presumptive meaning of "department," thus limiting it to the departments within the executive branch as enumerated in 5 U.S.C. § 101. *Id.*, at ——, 115 S.Ct. at 1759. The *Hubbard* Court dismissed as "strange indeed" the notion that a court might be an agency under section 1001. *Id.*, at ——, 115 S.Ct. at 1757. However, as the government is quick to point out, the Supreme Court "express[ed] no opinion as to whether any other entity within the Judicial Branch might be an agency within the meaning of § 6," *id.*, at —— n. 3, 115 S.Ct. at 1757 n. 3, and that, unless the "context" otherwise shows, other entities could be included as agencies within the meaning of section 1001. The government argues that this logic applies equally to the legislative branch. Since there is no contextual evidence demonstrating that "agency" should be narrowly construed, it must therefore include the Office of the Clerk in the House of Representatives, because this office is an office with agency-like functions. *See* Government's Opposition, at 14–24.

The Supreme Court's analysis does offer the government's theory some shelter, although in this case that shelter has a weak foundation and a leaky roof. The first flaw in the government's theory, as applied to the petitioner's case, is that he was indicted and convicted not for making false statements to the Office of the Clerk, but for making false statements to the "United States House of Representatives, a department or agency of the United States." *United States v. Hansen*, No. 83–00075, Indictment filed in Open Court (Apr. 7, 1983), at ¶¶ 5, 7, 9 & 11. This indictment was read to the jury prior to its

deliberations. *Id.*, Trial Transcript at 1944–49 (Apr. 2, 1984). The jury was also instructed that "[t]he United States House of Representatives is an agency of the United States." *Id.*, Trial Transcript at 1951. While the Supreme Court may have left some room to maneuver regarding whether the administrative offices of Congress and the Judiciary are agencies within the meaning of 18 U.S.C. § 1001, there is no doubt that the House of Representatives itself is beyond the grasp of the statute, regardless of whether it was construed as a department or an agency prior to *Hubbard.*

On appeal, the Court of Appeals construed the petitioner's conviction as being based on making false statements to the House Committee responsible for ·oversight of EIGA: *"The House Committee with which the forms were filed is a 'department' for purposes of § 1001,* since that term 'was mean to describe the executive, legislative and judicial branches of the Government.'" *Hansen,* 772 F.2d at 943 (emphasis added). Even under the Court of Appeals' interpretation, the legal defect in the petitioner's trial was precisely the same defect that the Supreme Court relied upon to invalidate *Bramblett:* a flawed construction of the term "department." The indictment, the jury instructions, and the reasoning underlying the Court of Appeals' affirmance were based on *Bramblett.* While it is true that perhaps the petitioner could have been charged with making false statements to the Office of the Clerk, the fact remains that he was not. Under the authority of *Hubbard,* the indictment, the jury instructions, and the basis for the petitioner's conviction would be, and are, invalid. In 1984, the petitioner was convicted of conduct that, after *Hubbard,* is no longer criminal under 18 U.S.C. § 1001.

The second flaw in the government's theory is the sweeping language in *Hubbard* itself as well as the Court's decision to over-

---

3. 18 U.S.C. § 6 provides:
 As used in this title:
 The term 'department' means one of the executive departments enumerated in section 1 [now § 101] of Title 5, unless the context shows that such term was intended to describe the executive, legislative or judicial branches of the government.

The term 'agency' includes any department, independent establishment, commission, administration, authority, board or bureau of the United States or any corporation in which the United States has a proprietary interest, unless the context shows that such term was intended to be used in a more limited sense.

rule *Bramblett* outright rather than construing it flexibly: "Similarly unprincipled would be rejecting *Bramblett*'s *dictum* that § 1001 applies to the courts, while adhering to *Bramblett*'s holding that § 1001 applies to Congress." *Hubbard*, —— U.S. at ——, 115 S.Ct. at 1766 (Scalia, J., concurring in part and concurring in the judgment). Instead of so limiting *Bramblett*, the Court expressly overruled it because of its substantial flaws. The Court understood that overruling *Bramblett* would carry post-conviction ramifications for individuals such as the petitioner. *Id.*, at ——, ——, 115 S.Ct. at 1765, 1766 (Scalia, J., concurring in part and concurring in the judgment) ("Some convictions obtained under *Bramblett* may have to be overturned, and in a few instances wrongdoers may go free who would have been prosecuted and convicted under a different statute if *Bramblett* had not been assumed to be the law. I count that a small price to pay for the uprooting of this weed."); *id.*, at —— n. *, 115 S.Ct. at 1768 n. * (Rehnquist, C.J., dissenting) (citing to *Hansen*, 772 F.2d 940 (D.C.Cir.1985), which affirmed the petitioner's conviction).

■ Finally, the Court of Appeals for the District of Columbia has indicated that *Hubbard* "narrowed the reach of § 1001 *to matters within the executive branch.*" *Dean*, 55 F.3d at 658–59 (emphasis added). Although the Court of Appeals has recently suggested that the precise definition of "agency" is an open question in this Circuit, it has not adopted the narrow construction of *Hubbard* offered by the government: "the Supreme Court, in *Hubbard v. United States* has held that *a false statement made to the Congress* is not within the ambit of the statute prohibiting false statements to 'any department or agency of the United States.'" *Rostenkowski*, 59 F.3d at 1301 (emphasis added) (citation omitted).[4]

■ Consequently, the remaining question is whether a failure to apply *Hubbard* retroactively would result in an error of fundamental character. Drawing upon the rule established for federal habeas review in *Davis v. United States*, 417 U.S. 333, 346, 94 S.Ct. 2298, 2305, 41 L.Ed.2d 109 (1974), the Court finds that *Hubbard*'s holding must be applied retroactively. *See Laughlin*, 474 F.2d at 451 (in the D.C. Circuit, habeas corpus standards generally apply to reviewing writs of error *coram nobis*); *accord United States v. Walgren*, 885 F.2d 1417, 1421 (9th Cir.1989), *cert. denied*, 507 U.S. 921, ·113 S.Ct. 1284, 122 L.Ed.2d 677 (1993) ("no principled basis for distinction" between habeas corpus and *coram nobis* proceedings).

In *Davis*, the Supreme Court held that to determine whether a change in the substantive criminal law was to be applied retroactively, "the appropriate inquiry [is] whether the claimed error of law was a 'fundamental defect which inherently results in a complete miscarriage of justice.'" *Davis*, 417 U.S. at 346, 94 S.Ct. at 2305 (citation omitted). For Justice Stewart and a majority of the *Davis* Court, a conviction arising from acts that the law no longer made criminal left "no room for doubt," *id.*, that the failure to apply the law retroactively would "inherently result[]" in a complete miscarriage of justice." *Id.*

Applying the standards in *Davis*, the Courts of Appeals have retroactively applied the Supreme Court's decision in *McNally v. United States*, 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987). Like *Hubbard*, the Supreme Court in *McNally* determined that conduct once construed as criminal was outside the scope of the applicable criminal statute, once that statute was properly interpreted. Prior to *McNally*, the federal courts had consistently interpreted the mail fraud statute, 18 U.S.C. § 1341, to allow for the conviction of government officials who had defraud-

---

4. In denying a petition for rehearing in *Rostenkowski*, the Court of Appeals warned against reading its previous statements in *Dean* and *Rostenkowski* to limit application of 18 U.S.C. § 1001 solely to the Executive Branch: "[W]e stated in *Dean* only that *Hubbard* controls our interpretation of § 1001 with respect to the question of what is a 'department' of the United States. We had no occasion in *Dean* to interpret

the term 'agency'—the indictment alleged that Dean had made false statements to a 'department of the United States,' *viz.* the Senate Banking Committee—and we did not do so." *Rostenkowski*, 68 F.3d at 490. In this case, similar to Dean's statements to the Senate Banking Committee, Hansen made false statements to a Committee representing the House of Representatives.

ed the public of their right to an honest government. *McNally,* 483 U.S. at 362–63 & nn. 1–2, 107 S.Ct. at 2882–83 & nn. 1–2 (Stevens, J., dissenting). However, in *McNally,* the Court upset that longstanding interpretation, limiting the scope of 18 U.S.C. § 1341 to the protection of property rights and placing the "intangible right" to good government beyond its reach. *Id.* at 360, 107 S.Ct. at 2881–82. After *McNally,* almost all of the federal courts faced with reviewing pre-*McNally* convictions of the mail fraud statute have applied its rule retroactively when considering writs of habeas corpus or writs of error *coram nobis. See, e.g., United States v. McClelland,* 941 F.2d 999, 1002 (9th Cir.1991) (*coram nobis* review); *United States v. Mitchell,* 867 F.2d 1232, 1233 (9th Cir.1989) (per curiam) (habeas corpus review); *United States v. Osser,* 864 F.2d 1056, 1059–60 (3rd Cir.1989) (*coram nobis* review); *United States v. Mandel,* 862 F.2d 1067, 1074–75 (4th Cir.1988), *cert. denied,* 491 U.S. 906, 109 S.Ct. 3190, 105 L.Ed.2d 699 (1989) (same); *United States v. Shelton,* 848 F.2d 1485, 1489–90 (10th Cir.1988) (habeas corpus review); *Ingber v. Enzor,* 841 F.2d 450, 455 (2nd Cir.1988) (same). *But see United States v. Callanan,* 671 F.Supp. 487, 493 (E.D.Mich. 1987), *rev'd in relevant part,* 881 F.2d 229, 232 (6th Cir.1989), *cert. denied,* 494 U.S. 1083, 110 S.Ct. 1816, 108 L.Ed.2d 946 (1990) (holding *McNally* not to be retroactive in habeas corpus proceeding; reversed on appeal).

This Court holds that *Hubbard* should be applied retroactively; "full retroactivity [is] a necessary adjunct to a ruling that a trial court lacked authority to convict or punish a criminal defendant in the first place." *United States v. Johnson,* 457 U.S. 537, 550, 102 S.Ct. 2579, 2587, 73 L.Ed.2d 202 (1982). Based on the Supreme Court's 1995 decision in *Hubbard,* the 1984 interpretation of the False Statements Act, 18 U.S.C. § 1001, upon which the petitioner's conviction was based, "is, and always was invalid." *Strauss v. United States,* 516 F.2d 980, 983 (7th Cir.1975).

 Although the Court will grant the petitioner's motion to set aside the sentence stemming from his 1984 conviction, it has no authority to provide the relief requested for his 1993 sentence, which stemmed from his 1992 conviction in Idaho. Under 28 U.S.C. § 2255, the petitioner must seek relief in the court in which the sentence was imposed. Additionally, this Court has limited authority to order the monetary relief requested. Ordering the return of a fine paid is, of course, permissible relief when considering a petition for a writ of error *coram nobis. E.g., Keane,* 852 F.2d at 204; *DeCecco v. United States,* 485 F.2d 372, 373 (1st Cir.1973); *Pasha v. United States,* 484 F.2d 630, 631–33 (7th Cir.1973); *United States v. Lewis,* 478 F.2d 835, 836 (5th Cir.1973). However, since the authority of the Court to order such monetary relief is based upon the Tucker Act, 28 U.S.C. § 1346(a), *see Keane,* 852 F.2d at 204; *Neely v. United States,* 546 F.2d 1059, 1064 (3rd Cir.1976); *DeCecco,* 485 F.2d at 373, the Court's authority is also subject to the Tucker Act's limitations. *Keane,* 852 F.2d at 204.

 The petitioner has requested that the Court order the government to repay the $40,000 fine, with interest, that he paid as a result of his 1984 conviction. While the United States has to an extent waived its sovereign immunity under the Tucker Act, *United States v. Bursey,* 515 F.2d 1228, 1233 (5th Cir.1975); *Pasha,* 484 F.2d at 633, its waiver does not include authorizing the federal courts to award interest. *Pasha,* 484 F.2d at 633; *see Library of Congress v. Shaw,* 478 U.S. 310, 314, 106 S.Ct. 2957, 2961, 92 L.Ed.2d 250 (1986); *Thompson v. Kennickell,* 797 F.2d 1015, 1017 (D.C.Cir.1986). The Court does, however, have jurisdiction under the Tucker Act to order repayment of the four $10,000 fines that petitioner paid even though the aggregate exceeds the $10,000 jurisdictional ceiling under 28 U.S.C. § 1346(a)(2). *Baker v. United States,* 722 F.2d 517, 518 (9th Cir.1983); *American Airlines v. Austin,* 778 F.Supp. 72, 76 (D.D.C. 1991). *See generally* 14 Wright, Miller & Cooper, Federal Practice & Procedure: Jurisdiction 2d § 3657, at 287 (1985). The repayment of the $40,000 will be ordered, but the request for interest will be denied.

### III. *Conclusion*

For the reasons stated above, it is hereby

ORDERED that the petitioner's motion for relief under the federal habeas corpus statute, 28 U.S.C. § 2255 is denied; it is

FURTHER ORDERED that a writ of error *coram nobis* is granted in part and denied in part; it is

FURTHER ORDERED that the petitioner's 1984 conviction for violating 18 U.S.C. § 1001 is vacated; it is

FURTHER ORDERED that the petitioner's request to amend the 1993 sentence resulting from his 1992 conviction in the United States District Court for the District of Idaho is denied; it is

FURTHER ORDERED that the petitioner's request for repayment of the $40,000 fine resulting from his 1984 conviction on four counts of violating 18 U.S.C. § 1001 is granted; and it is

FURTHER ORDERED that the petitioner's request for interest is denied.

IT IS SO ORDERED.